[No. 3196. Decided March 30, 1901.]

THE STATE OF WASHINGTON *on the Relation of Robert B. Lehman* v. ROBERT BRIDGES, *Commissioner of Public Lands.*

TIDE LANDS — FIRST AND SECOND CLASS — CONSTRUCTION OF STATUTE.
    Under Laws 1897, p. 248, § 39, which provides that tide lands of the first class shall comprise tide lands "within or in front of the limits of any incorporated city or town, or within two miles thereof on either side," and all tide lands not included in the above class shall be known as second class, the term "in front of the limits of any incorporated city" must be construed as referring to only such lands as lie adjoining and in front of the limits of a city; and the term "within two miles thereof on either side" should be construed as referring to such tide lands as are located, by measurement along the general direction of the city shore line, within a distance of two miles from either of its two boundary lines which extend inland from such shore line.

*Original Application for Mandamus.*

*B. F. Heuston,* for relator.

*Thomas M. Vance,* Assistant Attorney General, for respondent.

PER CURIAM.—This is an original application made to this court by the relator, whereby he seeks a peremptory writ of mandate against the respondent, commanding him to receive and file the relator's application to purchase certain tide lands in the county of King, state of Wash-

ington, and to issue a contract of sale for such lands as second-class tide lands.

It appears from the record that the application to purchase was duly made to the respondent as required by law, and accompanying the application was a tender of the amount necessary to be paid before the issuance of a contract for the sale of second-class tide lands. The only question submitted for our determination is, Are the lands involved first or second-class tide lands, within the meaning of the statute classifying tide and shore lands? The act of March 16, 1897 (Laws 1897, p. 248, § 39), provides as follows:

"The tide and shore lands of the state of Washington, which are not reserved from sale by the constitution and laws of the state, shall be divided into two classes:

(1) Tide and shore lands of the first class, which shall comprise all tide and shore lands within or in front of the limits of any incorporated city or town, or within two miles thereof on either side, including submerged lands lying between the line of mean low tide and the inner harbor line, wherever harbor lines have been established or shall be established.

(2) All tide and shore lands in the state not included in the above class shall be known as second-class tide and shore lands, and shall be leased and sold as in the manner provided in this act."

The record shows that the lands involved here lie opposite the easterly boundary of the city of Tacoma, and that the limits of said city on the easterly side extend from the upland of the shore upon which the city is built down to the bay, and intersect and cross the government meander line on the shore thereof in a general perpendicular direction, and extend on across the tide lands fronting on said shore and out into the navigable water of said bay, and thence "down the bay," as the boundary is described, into Puget Sound; that the limits of such city thus include

not only the meander line, tide lands, and harbor areas in front of the shore on which the city is built, but they extend out into navigable water from six to thirty fathoms deep, and at some places more than a mile from any shore; that the tide lands described in the petition are upon the opposite side of the bay from such city, and separated from it by navigable water, and by more than two miles, measured along the meander line of the shore upon which the city is built, but said lands do lie within two miles in a direct line across the bay from, and in front of, an imaginary city boundary line running up and down said bay midway between the shores thereof.

If these are tide lands of the first class, as contended by respondent, they must lie either "within" or "in front of" the limits of the city of Tacoma, or "within two miles thereof on either side." It is clear that they do not lie "within" the limits of the city. Do they lie "in front of" the limits of an incorporated city or town? We think not, within the meaning of the statute above quoted. It is our opinion that the legislature intended by the words "in front of" to include only such lands as lie *adjoining and in front of* the limits of an incorporated city, and it was not intended that the words should apply to lands which may happen to lie in front of a city in fact, but across a channel of navigable water and upon an opposite shore. It is possible for another city or town to be located upon such opposite shore, and in that event the lands adjoining or within its shore limits certainly could not be held to lie "in front of" the limits of another city upon an opposite shore when a channel of navigable water exists between the boundaries of the two. From a geometrical point of view "in front of" might include everything between the prescribed line and infinity; but, as applied practically to measurements on the surface of the earth,

we believe it can only mean immediately in front of,—that is, adjoining.

The remaining question is, are these lands "within two miles thereof on either side," considered with reference to the limits of the city of Tacoma? The only measurement which brings them within two miles is by a direct line across the bay from and in front of an imaginary city boundary line running up and down said bay midway between the shores thereof. We believe the legislature intended by the language above quoted to determine the location of such lands by measurement along the general direction of the shore line, a distance of two miles from either of the two boundary lines which extend inland from such shore line. Such measurement, it is conceded, cannot include these lands. We, therefore, conclude that the lands involved must be held to be second-class tide lands, and that the relator is entitled to the relief which he asks. We accordingly direct the issuance of a peremptory writ of mandate in accordance with the prayer of the petition.