[No. 10405. Department Two. April 23, 1913.]

## ROBERT B. LEHMAN, *Plaintiff and Appellant,* v. MAY N. HEUSTON *et al., Defendants and Appellants.*[1]

TRUSTS—ESTABLISHMENT—EVIDENCE—SUFFICIENCY. The evidence is insufficient to establish a trust in tide lands, where it appears that partners, theretofore equally interested therein, had a full settlement and by written agreement dissolved all their relations, one partner at the same time executing to the other an absolute assignment of all his interests in the lands, after which he exercised no control over them and made no claim thereto for nearly ten years during the lifetime of the other, nor to moneys known to have been received from sales, and filed no claim therefor against his estate.

LIMITATION OF ACTIONS—RECOVERY OF REAL ESTATE—TRUSTS. An action to recover from the widow of plaintiff's former partner an undivided half of real estate as to which plaintiff claimed an equitable interest, is an action to recover real estate, and not to establish a trust, nor barred by the statute of limitations relating thereto.

TRUSTS—ESTABLISHMENT—EVIDENCE—SUFFICIENCY. Findings that property was held in trust for the plaintiff are sustained, where it appears that a mortgage was held in trust for him and that he caused the same to be foreclosed, and the title acquired by foreclosure was thereafter taken and held by plaintiff's attorney, his former partner and friend, and held as security for taxes and assessments paid, the plaintiff being financially embarrassed; it appearing from a notation in the attorney's docket in his handwriting that the mortgage liens were being foreclosed for the plaintiff.

Cross-appeals from a judgment of the superior court for Pierce county, Clifford, J., entered January 20, 1912, in an action to recover property and for an accounting. Affirmed.

*Fletcher & Evans* and *Fenley Bryan,* for plaintiff.

*E. R. York* and *T. W. Hammond,* for defendants.

CROW, C. J.—This action was commenced by Robert B. Lehman against May N. Heuston, Elizabeth Heuston Huston, and Catherine A. Heuston, to recover certain tide lands in Pierce and King counties, certain lots in the city of Tacoma, personal property consisting of office furniture and law books,

[1]Reported in 131 Pac. 825.

and to obtain an accounting. No findings of fact were made, but the trial court entered a decree, dismissing plaintiff's complaint as to the tide lands; awarding plaintiff certain lots in the city of Tacoma, together with the sum of $75, the net proceeds of lots theretofore sold by defendants after deducting disbursements made by defendants for taxes and improvements; and awarding plaintiff the office furniture and law books in dispute. Plaintiff has appealed from that portion of the decree by which his complaint was dismissed as to the tide lands. Defendants have appealed from the remainder of the decree.

As both parties have appealed, we will designate them as plaintiff and defendants. The record and printed briefs are voluminous, the transactions involved extending over a period of more than ten years. To state the evidence, or completely detail the ultimate facts, which it tends to establish, would require an opinion of interminable length, and serve no good purpose. We have not the benefit of findings made by the trial judge, and now make our own findings.

Relative to the office furniture and law books, we do not think it necessary to make any statement of the evidence. After a careful consideration of the entire record, we conclude that they belonged, and were properly awarded, to the plaintiff.

Relative to the tide lands, we find the following facts: Prior to 1891, plaintiff, Robert B. Lehman, an attorney at law, was engaged in the practice of his profession in the city of Tacoma. In that year, B. F. Heuston, now deceased, then a young attorney of limited means, entered plaintiff's law office, working for plaintiff upon a salary and perhaps for other compensation. From that time until Mr. Heuston's death, which occurred on May 6, 1907, plaintiff and Heuston were, and continued to be, intimate friends, sustaining the most cordial relations. In connection with his practice, plaintiff purchased and equipped, at his own expense, an abstract plant, with title and trust features. After 1896, by a read-

justment of their business relations, plaintiff devoted most of his time and energies to the abstract business, while Mr. Heuston continued the law business with an office in plaintiff's building, which he occupied without the payment of rent. During this period, plaintiff and Mr. Heuston investigated tide lands then owned by the state, and on or about February 17, 1898, plaintiff filed with the land commissioner, applications 2720, 2721 and 2722, for the purchase of large tracts of second-class tide lands in Pierce and King counties. On December 10, 1898, plaintiff presented to the land commissioner a further application, number 2794, for certain tide lands which he and Heuston insisted were second-class tide lands, but which the land department insisted were first-class tide lands. All applications were made in the name of Mr. Lehman, Mr. Heuston acting as his attorney, but they appear to have been jointly and equally interested in the enterprise until December 23, 1899. The land commissioner rejected application 2794, whereupon plaintiff, through Mr. Heuston as his attorney, applied to this court for a writ of mandate, requiring the commissioner to allow its filing. The writ was granted on March 30, 1901 (*State ex rel. Lehman v. Bridges*, 24 Wash. 363, 64 Pac. 518); but subsequent litigation hereinafter mentioned arose relative to the lands included in application 2794.

For a number of years plaintiff continued the management of his abstract office, while Mr. Heuston continued the practice of law, their business, professional and personal relations being intimate. On December 23, 1899, as shown by an executed written agreement, and other papers found to have been in the possession of Mr. Heuston at the date of his death, a settlement was had between the parties, upon which the defendants now rely. This agreement reads as follows:

"The undersigned having had extensive business relations and dealings with each other during the past nine years and wishing to settle their affairs, wind up all business relation-

ships, and exchange receipts and releases in full to this date, do hereby mutually agree as follows:

"(1) That all business relations heretofore existing between us of every kind and nature are hereby dissolved and declared at an end.

"(2) That the parties hereto mutually release each other from all accounts and accountings, the one with the other, and hereby acquit each other from all obligations, the one with the other, to this date; Provided, and it is mutually agreed, that one certain note and chattel mortgage for $1000 made by R. B. Lehman to B. F. Heuston and now in the Puget Sound Savings Bank has a balance due and unpaid at this date of $500, payments having been made on this note reducing it to that amount, and certain of the mortgaged property having been heretofore released and delivered to said Lehman.

"Executed in duplicate this 23rd day of December, 1899.
                "R. B. Lehman. (Seal)
                "B. F. Heuston. (Seal)"

On the same day, December 23, 1899, Mr. Lehman executed written assignments of all the tide land applications to Mr. Heuston. These assignments recite that they were executed for the consideration of $1, and other valuable considerations. In these assignments, Mr. Lehman, as party of the first part, expressly stipulated and agreed, to execute any further assignment or transfer of any such contract or interest at the request of the party of the second part, his heirs or assigns. From this time until Mr. Heuston's death the management, control and sale of these tide lands appear to have been in the exclusive charge of Mr. Heuston, save and except that, on several occasions, he would request the plaintiff to execute contracts and deeds to third parties for lands involved in the pending litigation, which was being conducted in Mr. Lehman's name, and that plaintiff did execute such instruments. The litigation mentioned arose relative to tide lands near Seattle and Tacoma, which plaintiff and Heuston claimed were second-class lands, but which other parties to the litigation insisted were first-class, and it was while this liti-

gation was pending that a number of interested parties, desiring to quiet their titles, negotiated with Heuston for deeds and releases, many of which, at Heuston's request, were executed by Lehman, the party in whose name the litigation was pending. The consideration for these deeds paid by the third parties, which amounted to a very considerable figure, was received and retained by Heuston, with the exception of perhaps $150, which plaintiff concedes he at one time received. The assignments of the applications to Heuston, executed by Lehman, subsequent deeds from the state to Heuston, various deeds executed by Lehman and by Heuston to third parties, deeds for tide lands sold by Heuston after 1899, and also deeds executed by May N. Heuston, his widow and legatee, were from time to time filed and recorded in the offices of the auditors of King and Pierce counties.

Mr. Heuston died testate on May 6, 1907, having devised to his widow the tide lands, and the city lots, and having named her as his executrix. It may be noted, however, that none of the real estate was described in the will. The will was probated on May 20, 1907, at which time the plaintiff appeared in court and testified as a witness to its execution. The estate was settled, and final distribution of the tide lands and lots which had been returned in the inventory was made to the defendant, May N. Heuston, on May 1, 1909. At no time did Mr. Lehman present any claim to the estate. In this action plaintiff claims that all interests acquired by Mr. Heuston in the tide lands under the various assigned applications, were obtained equally for Mr. Heuston and plaintiff; that such joint interest and ownership continued until Mr. Heuston's death, and at all times thereafter; that the assignments of the applications which plaintiff made on December 23, 1899, were made without other consideration than for the purpose of enabling Heuston, as attorney for himself and plaintiff, to handle the tide lands, raise funds to pay the purchase money to the state, to act at all times equally for himself and plaintiff; that plaintiff had no knowledge of the fact

that Heuston was handling the tide lands as his own, or that he was receiving any money from their sale, or from settlements, further than was necessary to pay the state, and meet taxes and other necessary disbursements; that, in fact, B. F. Heuston during his lifetime, and the defendant, May N. Heuston, his widow since his death, have realized upwards to $40,000 from settlements and sales in excess of such necessary disbursements; that the record title to tide lands, of the value of $40,000 or more, above mentioned, now stands in the name of the defendant, May N. Heuston, who claims exclusive ownership; that the plaintiff did not discover these facts until after final settlement of the estate; that, upon receiving his first intimation of these conditions, he immediately entered upon an investigation, and that as soon as he had sufficiently completed the same, he instituted this action, which was commenced in November, 1909.

Upon these facts, the question presented is, whether plaintiff has established a trust in these tide lands for his benefit; whether he can recover any of them; and whether he is entitled to an accounting from the defendant, May N. Heuston. The trial court held against him on all of these issues; and we have concluded that the holding must be sustained.

Defendants insist that this action is barred by the statute of limitations, that plaintiff is estopped from maintaining the same, that he has been guilty of laches, and that the evidence is insufficient to charge May N. Heuston as trustee.

Although defendants, with much earnestness, insist that this action has been commenced to establish a trust, and that as such it has not been commenced within the time limited by law, we hold that it nevertheless is an action to recover real estate, as to an undivided one-half of which plaintiff claims the equitable title, and that it is not barred by any statute of limitations.

There is no dispute as to the execution of the agreement of December 23, 1899, by which the parties appear to have settled all their business relations to that date. The purpose

of the agreement is disputed. It is conceded that, on the same date, plaintiff executed the written assignments to Mr. Heuston of all interest obtained by him in and to the tide lands, under the applications theretofore filed with the land commissioner. These instruments are absolute and unconditional; they recite no trust, nor do they allude to any other instrument creating any trust. They are not susceptible of construction, and if sustained, are sufficient to support defendants' contention that plaintiff then parted with all of his interests in and to the tide lands, and that he then transferred them to Mr. Heuston, who thereafter held and owned them in his own right. The plaintiff has produced a number of witnesses who testified to statements and admissions made by Mr. Heuston at various times subsequent to December 23, 1899, and insists that such statements and admissions show that Mr. Heuston, against his own interests, acknowledged that plaintiff had an equal interest with him in and to the tide lands at all times after December 23, 1899. The testimony of the witnesses as to any such statements is uncertain, unsatisfactory, and not sufficient to sustain an order setting aside the absolute contract of settlement and the transfers which plaintiff has executed. *Chambers v. Emery,* 13 Utah 374, 45 Pac. 192.

In *Burrows v. Williams,* 52 Wash. 278, 100 Pac. 340, this court in substance held that when parties are engaged in a general adjustment of business matters, and execute papers of settlement, the law raises a strong presumption that the executed instruments of settlement are final, and include all claims which the one could then make upon the other. The contract and assignments executed by plaintiff on December 23, 1899, indicate a full and complete settlement of all matters then pending between the parties, and plaintiff has not produced evidence sufficient to modify, vary or annul such instruments. In *Burrows v. Williams, supra,* speaking of the parties to the contract of settlement there involved, this court said:

"They were engaged in a general settlement, and no attack upon the title was anticipated or threatened. The law raises a strong presumption of fact that when parties are so engaged they will consider and settle every existing difference. 'Courts do not encourage the overturning of settlements voluntarily made and long asquiesced in.' 8 Cyc. 533. In the case at bar, although in equity respondents may have had (although we do not so decide) an interest in the property, they can only overcome the presumption arising from the settlement, and declare a trust, by testimony so clear and convincing that the court can free the transaction from all doubt as to the intent of the parties. *Spencer v. Terrel,* 17 Wash. 514, 50 Pac. 468; *Burke v. Fuller,* 41 La. Ann. 740, 6 South. 557; *Desha v. Smith,* 20 Ala. 747; *Wells v. Erstein,* 24 La. Ann. 317; *Murray v. Ellston,* 24 N. J. Eq. 320; *Little v. Little,* 2 N. D. 175, 49 N. W. 736; 47 Cent. Dig. § 137; *Peterson v. Martin,* 28 N. C. 111."

Numerous transactions were had relative to these tide lands by Mr. Heuston after December 23, 1899, and prior to his death. Many instruments affecting the title were executed and recorded; money was collected by him in payment for tide lands sold, and in partial settlements of the litigation then pending. In one instance, two checks for $1,000 each, received in settlement, were made payable to plaintiff's order, were endorsed by him and returned to Heuston, who appropriated the proceeds, with the exception of $150, which plaintiff says he received. It is contended that the litigation relative to tide lands in King and Pierce counties was prosecuted in the name of Mr. Lehman as plaintiff, but that fact is not of controlling importance, as the original applications were made to the land commissioner in his name, and the litigation was doubtless continued in his name for the benefit of his grantees, under the doctrine of *lis pendens.* *Trumbull v. Jefferson County,* 60 Wash. 479, 111 Pac. 569, 140 Am. St. 943.

In the light of all these transactions, and others disclosed by the record, and in view of the fact that, for nearly ten

years after December 23, 1899, the plaintiff made no de-
mand for an accounting or settlement from Heuston or his
widow, we conclude that he cannot recover any interest in
the tide lands or the proceeds of their sales. There is an
utter absence of that clear, cogent and convincing evidence
which should be required to satisfy an impartial mind, of
fraudulent acts on the part of Mr. Heuston, or to show that
the instruments which plaintiff has executed should be ig-
nored, rejected, modified or annulled. They must be sus-
tained in strict compliance with their clearly expressed terms.

As to the city lots awarded to plaintiff by decree of the trial
court, we find the following facts: Some time prior to June,
1899, the plaintiff, Lehman, had been appointed by the supe-
rior court of Pierce county as receiver for a corporation
known as the Oakland Land, Loan & Trust Company. When
the affairs of this corporation were to be finally adjusted,
the property remaining in the receiver's hands included two
mortgages covering the city lots in controversy. The court
allowed Mr. Lehman a considerable compensation as receiver,
which had not been paid. The assets were ordered sold, and
the receiver, by order of court, was permitted to bid at the
sale. Instead of bidding, he procured one Fred Eidemiller
to purchase the mortgages at the receiver's sale in trust for
him. The mortgages were conveyed to Mr. Eidemiller by a
receiver's deed, which upon its face described and purported
to convey the land, upon which the mortgages were liens. The
only effect of this deed was to assign the mortgages. Prior
to the written contract of settlement of December 23, 1899,
between Lehman and Heuston above mentioned, Heuston, as
attorney for Lehman, had instituted actions in the superior
court of Pierce county in the name of Eidemiller as plaintiff,
to foreclose these mortgages for the benefit of Lehman. Evi-
dence produced on the trial of this action shows that Mr.
Lehman was paying the expenses of the litigation. The
foreclosure proceedings were continued by Mr. Heuston as
attorney for Mr. Lehman after December 23, 1899. There-

after, and while the foreclosure proceedings were still pending, Mr. Heuston, as attorney for himself and various clients, undertook the adjustment of certain tax claims on numerous lots in the city of Tacoma. He then conceived the idea that it would be well to adjust delinquent taxes in the same action, without additional expense, and for Mr. Lehman's benefit, on the city lots now in controversy. With this purpose in view, he asked Mr. Eidemiller to execute a deed to him for the city lots. This was done, and as Eidemiller had no legal title, but held the mortgage lien only in trust for Mr. Lehman, the deed which he executed had no other force or effect than to assign the mortgage lien to Mr. Heuston. Thereafter Mr. Heuston effected an adjustment with Pierce county as to these and other lots. A foreclosure decree was entered in favor of the county, the property was sold at tax sale, and on December 31, 1904, the treasurer of Pierce county, by tax deed, conveyed the lots to Calvin Phillips & Company, a corporation, which had purchased them at Mr. Heuston's request. On January 11, 1905, Calvin Phillips & Company, at Mr. Heuston's solicitation, conveyed the lots to him, the only consideration being that Heuston then agreed that Calvin Phillips & Company should act as agent for the sale of the lots, whenever they should be placed upon the market. The lots were then of small value, but have since become quite valuable. Subsequent to the execution of these deeds, Mr. Heuston, during his lifetime, and the defendant, May N. Heuston, since his death, made heavy disbursements for taxes and special assessments upon the lots. The widow, May N. Heuston, sold some of the lots, and the trial court in effect made a finding, which is not questioned, that the purchase money received by her from their sale exceeded all disbursements made by Mr. Heuston, by herself, and also by Elizabeth Heuston Huston and Catherine A. Heuston, by the sum of $75, which excess was awarded to plaintiff by the final decree herein.

Shortly after the foreclosure actions were commenced in

Eidemiller's name, and from that time until Mr. Heuston's
death, Mr. Lehman seems to have been financially involved;
and to avoid being continually harassed by his creditors, went
into retirement, or as he expressed it, into isolation, in some
rural locality between Seattle and Tacoma, where he resided
at the date of Mr. Heuston's death. During this period, he
was doubtless unable to pay taxes upon the lots, and there is
no contention that he did pay them. The evidence is that
they were paid by Heuston, his widow, and her grantees.
After final distribution of Mr. Heuston's estate, his widow,
May N. Heuston, as a gift, and in consideration of love and
affection, conveyed several of the city lots to the defendants
Elizabeth Heuston Huston and Catherine A. Heuston, rela-
tives of her deceased husband, and these lots are awarded to
plaintiff by the final decree herein. The defendants named,
who were not *bona fide* purchasers for value, held the record
title to the lots thus conveyed prior to and at the time of the
commencement of this action. No further reference to these
defendants need be made, as their rights and liabilities must
necessarily be controlled by the determination of the rights
and liabilities of May N. Heuston, their grantor. The trial
court, upon conflicting evidence, concluded that the title to
the lots in dispute, which had been obtained by B. F. Heuston
through Eidemiller and the tax foreclosure, had been ob-
tained by him for the benefit of Lehman; and we conclude
that this finding must be sustained. From office dockets in
Mr. Heuston's possession at the date of his death, it appears
in his handwriting that the mortgage liens upon these lots
were being foreclosed for Mr. Lehman. It is evident that
Mr. Heuston, as his attorney, was foreclosing the mortgages
with the intention of procuring the legal title, that later he
ascertained it could be procured through the tax foreclosures,
and that for such purpose he had tax deeds made to Calvin
Phillips & Company. Mr. Lehman and Mr. Heuston were at
all times close and intimate friends, one reposing and having
complete confidence in the other. Mr. Lehman was in finan-

cial distress, and bad health. It is evident that Mr. Heuston therefore held title to the city lots in trust for Mr. Lehman, and also to secure advances which he had made for taxes and special assessments; that the equitable title to the lots, subject to Mr. Heuston's lien for such advancements and expenses, was in Mr. Lehman; that Heuston held the legal title as security, and that his only claim was of the nature of a mortgage lien to secure such advances.

There is nothing in the record to indicate that Mr. Heuston at any time was guilty of unprofessional or dishonorable conduct, that he was attempting to defraud the plaintiff, or that he ever had the slightest intention of so doing. We are convinced that had his life been spared, he would have recognized the plaintiff's equitable title to these city lots, and would have effected a proper adjustment at some appropriate time. We are further satisfied that May N. Heuston, as his widow, honestly believed the lots belonged to his estate, and that she was ignorant of the circumstances relative to the foreclosure proceedings and tax sales now disclosed by the evidence. There may be some little doubt as to Mr. Lehman's exact rights in the premises, but in view of the finding which the trial court must have made, and after weighing the evidence, especially the testimony of the witnesses Eidemiller, Johnson and Gove, which cannot be here detailed, we are satisfied that the court properly awarded the unsold city lots to plaintiff.

It must be conceded that this opinion, although of too great length, does not completely detail all evidence, facts and circumstances disclosed by the record; but were the same to be more fully stated, we feel assured that the only effect would be to fortify the conclusion we have reached, that justice has been done, and that the decree is equitable.

The judgment is affirmed. None of the parties will recover costs in this court.

Mount, Gose, and Fullerton, JJ., concur.